UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
APRIL L.K.,

                         Plaintiff,          <u>DECISION AND ORDER</u>
                                             1:20-CV-07512-GRJ

            v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

        In July of 2018, Plaintiff April L.K.[1] applied for Supplemental Security

Income Benefits under the Social Security Act. The Commissioner of Social

Security denied the application.  Plaintiff, represented by Ny Disability, LLC,

Daniel Berger, Esq., of counsel, commenced this action seeking judicial

review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§

405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a

United States Magistrate Judge. (Docket No. 22).

        This case was referred to the undersigned on January 26, 2022.

Presently pending are the parties' Motions for Judgment on the Pleadings

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 23,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

28). For the following reasons, Plaintiff's motion is granted, the
Commissioner's motion is denied, and this case is remanded under
sentence four of section 405 (g) of the Social Security Act for further
proceedings.

## I.  BACKGROUND

### A.  *Administrative Proceedings*

Plaintiff applied for benefits on July 25, 2018, alleging disability
beginning the same date. (T at 10, 78).[2]  Plaintiff's application was denied
initially and on reconsideration.  She requested a hearing before an
Administrative Law Judge ("ALJ").  A hearing was held on August 21, 2019,
before ALJ Raymond Pryzbylski. (T at 27). Plaintiff appeared with an
attorney and testified. (T at 32-54). The ALJ also received testimony from
Michael Smith, a vocational expert. (T at 56-66).

### B.  *ALJ's Decision*

On September 16, 2019, the ALJ issued a decision denying the
application for benefits. (T at 7-22).  The ALJ found that Plaintiff had not
engaged in substantial gainful activity since July 25, 2018 (the alleged
onset date). (T at 12).  The ALJ concluded that Plaintiff's asthma;
epicondylitis; depressive disorder; anxiety disorder; post-traumatic stress

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 17.

disorder; and learning disorder were severe impairments as defined under the Act. (T at 12).

The ALJ further found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 12).

The ALJ next determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, as defined in 20 CFR § 416.967 (b), with the following limitations: she can only occasionally climb ramps or stairs; needs to avoid concentrated exposure to respiratory irritants; is limited to simple tasks; can tolerate few, if any, workplace changes; and can tolerate no more than occasional interaction with the public, co-workers, or supervisors. (T at 14).

The ALJ noted that Plaintiff had no past relevant work. (T at 18).

Considering Plaintiff's age (38 on the application date), education (high school and able to communicate in English), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 18).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between July 25, 2018 (the application

3

date) and September 19, 2019 (the date of the ALJ's decision). (T at 19).

On July 17, 2020, the Appeals Council denied Plaintiff's request for review,

making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing

a Complaint on September 14, 2020. (Docket No. 1).  On October 7, 2021,

Plaintiff filed a motion for judgment on the pleadings, supported by a

memorandum of law. (Docket No. 23, 24).[3]  The Commissioner interposed

a cross-motion for judgment on the pleadings, supported by a

memorandum of law, on January 18, 2022. (Docket No. 28).  On February

8, 2022, Plaintiff submitted a reply memorandum of law in further support of

her motion. (Docket No. 30).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the

---

[3] A second, duplicate memorandum of law was filed on behalf of Plaintiff in error.
(Docket No. 27).

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises three (3) main arguments in support of her request for reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed.  Second, she challenges the ALJ's credibility determination.  Third, Plaintiff contends that the ALJ erred in his Listings analysis at step three of the sequential evaluation. This Court will address each argument in turn.

### A.    Medical Opinion Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed on July 25, 2018 (T at 78), the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, the record contains two (2) medical opinions regarding Plaintiff's mental impairments.

Dr. E. Kamin, a non-examining State Agency review physician, opined that Plaintiff had moderate limitation as to understanding, remembering, and applying information; mild impairment with respect to interacting with others; moderate limitation in concentrating, persisting, or

maintaining pace; and mild limitation with regard to adapting or managing herself. (T at 71).  Dr. Kamin stated that Plaintiff retained the ability to perform unskilled work. (T at 72).  The ALJ found Dr. Kamin's assessment "generally persuasive." (T at 17).

Dr. Howard Tedoff performed a consultative psychiatric examination in November of 2018.  Dr. Tedoff described Plaintiff as cooperative and quiet, with minimal eye contact, but coherent thought processes. (T at 621-22).  Plaintiff's mood and affect were dysphoric; she demonstrated mild impairment in attention and concentration, good insight, fair judgment, and borderline-to-low average cognitive functioning. (T at 622).

Dr. Tedoff opined that Plaintiff would have no limits as to understanding, remembering, or applying simple directions and instructions; moderate limitation with regard to understanding, remembering, or applying complex directions and instructions and using reason and judgment in making all but the most basic work-related decisions. (T at 623).  Dr. Tedoff assessed moderate to marked impairment in Plaintiff's ability to interact with co-workers, supervisors, and the public; mild to moderate limitation as to her ability to sustain concentration and perform at a consistent pace; and moderate to marked limitation with respect to sustaining an ordinary routine and regular attendance at work. (T

at 623).  Dr. Tedoff described Plaintiff's prognosis for being able to seek and sustain gainful employment as "guarded." (T at 623).

The ALJ found Dr. Tedoff's opinion "only somewhat persuasive." (T at 17).  The ALJ concluded that Dr. Tedoff's assessment of moderate to marked impairment in Plaintiff's ability to interact with others and maintain work attendance to be inconsistent with clinical examinations (including Dr. Tedoff's own examination) wherein Plaintiff displayed "cooperative demeanor, adequate social skills, good insight, and fair judgment." (T at 17-18).

This Court concludes that the ALJ's analysis of Dr. Tedoff's assessment incomplete in two respects.

First, the sole basis provided for discounting the assessment of moderate to marked impairment in Plaintiff's ability to interact with others and maintain attendance at work is based upon the fact that Plaintiff was cooperative and appropriate during relatively brief, supportive encounters with medical providers.  (T at 17-18).

The Commissioner's regulations, however, recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of

11

regular employment during a normal workday or work week."  20 C.F.R.

Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ.

6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting

that ALJs must recognize that "the effects of a mental health issue may be

different in a work setting than in a non-work setting"); *Flynn v. Comm'r of

SSA*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion

based on treatment notes indicating claimant was "well-groomed and with

calm affect" was "an assessment ... beyond the scope of the ALJ's

authority"); *Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 11 (2d Cir. 2020) ("It

would be improper to rely on these mental status evaluations to conclude

that Stacey is capable of prolonged concentration while simultaneously

ignoring the contrary conclusion of the very physicians who made the

evaluations.").

Second, the ALJ failed to address relevant evidence directly bearing

upon the question of whether Plaintiff could maintain a regular schedule.

For example, the record reflects that Plaintiff missed numerous medical

appointments and was warned that she was at risk of being discharged

from treatment due to "excessive absences."  (T at 609, 611, 613, 614,

616, 617, 618).  Assuming then (as the ALJ assumed in his decision) that

Plaintiff's cooperative demeanor during appointments was probative proof

of her social skills, then Plaintiff's inability to consistently attend appointments is equally supportive of Dr. Tedoff's assessment of moderate to marked limitation in the ability to maintain work attendance.

The ALJ's failure to address and evaluate Plaintiff's ability to maintain work attendance was error and therefore impacted the evaluation of Plaintiff's RFC and in turn the assessment of whether Plaintiff could perform other jobs in the national economy.

For these reasons, the Court concludes that the ALJ's consideration of Dr. Tedoff's opinion was flawed and must be reassessed.

> B.    Credibility

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929. However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted).

Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec.*, 111 F. Supp. 3d

250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.

First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a

credibility inquiry." *Meadors*, 370 F. App'x at 184.  This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows. She lives in supportive housing with her three children, ages 18, 13, and 9. (T at 33-34). She graduated from high school. (T at 34).  She cannot work due to frequent flashbacks and suicidal thoughts. (T at 37, 41-43).  She is socially isolated and has problems with concentration. (T at 42-43, 49).  Nightmares

cause difficulties with sleeping. (T at 45).  She cares for her children, including a daughter on the autism spectrum.  (T at 45-46, 48).  She performs basic household chores. (T at 46-47, 49, 52-53).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but concluded that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 15).

Although the ALJ was not specific in explaining this portion of his decision, it is evident the ALJ discounted Plaintiff's testimony based on her activities of daily living and generally cooperative and appropriate demeanor during medical appointments. (T at 15-18).

As discussed above, Plaintiff's ability to maintain appropriate affect during medical appointments is not necessarily indicative of the ability to meet the social and attendance demands of regular work activity.  *See* 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *Primo*, 2019 U.S. Dist. LEXIS 27074, at *31; *Flynn*, 729 Fed. Appx. at 121 (2d Cir. 2018). Further, the fact that Plaintiff was warned of discharge from medical care due to excessive absences is strongly suggestive of serious impairment in her ability to maintain a regular work schedule.

Moreover, Plaintiff's subjective reports of social isolation and limited activities of daily living are largely supported by Dr. Tedoff's assessment of moderate to marked impairment in her ability to interact with co-workers, supervisors, and the public; and moderate to marked limitation with respect to sustaining an ordinary routine and regular attendance at work. (T at 623).

Lastly, to the extent that the ALJ relied on Plaintiff's ability to care for her children and perform basic household chores as a basis for discounting her credibility, courts have consistently found such activities to be of limited value when assessing whether a claimant can sustain work in the face of significant mental health impairments. *See, e.g., Mejia v. Barnhart*, 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003)("The ALJ's finding that plaintiff's participation in solitary activities within the confines of her home and engagement in limited social activities with the assistance of her family is 'inconsistent with a disabling impairment' is not supported by medical opinion."); *Samaru v. Comm'r of Soc. Sec.*, No. 18-cv-06321(KAM) (LB), 2020 U.S. Dist. LEXIS 100141, at *30 (E.D.N.Y. June 8, 2020)("The critical differences between activities of daily living and activities in a full time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum

standard of performance, as she would be by an employer.")(quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)).

The ALJ's credibility determination cannot be sustained.

C.      *Listings Analysis*

At step three of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1 of the Regulations (the "Listings"). See 20 C.F.R. §§ 404.1520(d), 416.920(d). If a claimant meets or equals a listed impairment, she is "conclusively presumed to be disabled and entitled to benefits." *Bowen v. City of New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). "The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing." *Henry v. Astrue*, 32 F. Supp. 3d 170, 182 (N.D.N.Y. 2012) (citing *Naegele v. Barnhart*, 433 F.Supp.2d 319, 324 (W.D.N.Y.2006)).

Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the Listings impairments. (T at 13). The ALJ gave specific consideration to paragraph (B) of the impairment set forth at Listing 12.04 (Depressive, bipolar and related disorders). To satisfy that Listing, a claimant must

have, *inter alia*, extreme limitation in one, or marked limitation in two, of the following domains of mental functioning: understanding, remembering, or applying information; interacting with others; maintaining concentration, persistence, or pace; and adapting or managing oneself.

The ALJ found the requirements of this Listing not satisfied.  (T at 13).  In particular, the ALJ assessed moderate limitation regarding Plaintiff's ability to understand, remember, or apply information; moderate limitation in her ability to interact with others; moderate limitation with respect to maintaining concentration, persistence, or pace; and moderate limitation in adapting or managing herself. (T at 13-14).

The ALJ's Listings analysis is undermined by the same errors outlined above related to Dr. Tedoff's assessment. In particular, the ALJ's consideration of Plaintiff's ability to interact with others and adapt and manage herself does not reflect a proper consideration of Dr. Tedoff's opinion or the longitudinal record, which included relevant evidence of an inability to maintain a schedule and sustain interpersonal relationships. This aspect of the ALJ's decision likewise was flawed.

D.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with

or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

Given the deficiencies in the ALJ's analysis related to Plaintiff's ability to maintain a regular schedule, and the ALJ's flawed analysis of Dr. Tedoff's opinion, all of which impacted the ALJ's evaluation of whether Plaintiff met a listing, the evaluation of Plaintiff's RFC, and ultimately, the evaluation of whether Plaintiff could perform other jobs that exist in significant numbers in the national economy, the Court concludes this case must be remanded for further proceedings

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 23) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 28) is DENIED; this case is REMANDED under sentence four of section 405 (g) of the Social Security Act for further proceedings consistent with this decision; and this case is

CLOSED without prejudice to a timely application for attorneys' fees and costs. The Clerk is directed to enter final judgment in accordance with this decision.

Dated: March 21, 2022          *s/Gary R. Jones*

                               GARY R. JONES
                               United States Magistrate Judge